# FIRST AMENDED DISCLOSURE STATEMENT
# FOR
# RUSSELL W. FRENCH, DEBTOR

---

CASE NO.05-93655-H5-11
UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THE HONORABLE KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

# TABLE OF CONTENTS

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Nature of Chapter 11 Reorganization Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Considerations in Voting on the Chapter 11 Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     History of the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.      Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       B.      Events Leading to the Chapter 11 Filing . . . . . . . . . . . . . . . . . . . . . . . . . . 8
       C.      The Chapter 11 Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
       D.      Operation and Present Condition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.      Anticipated Future of the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.     Source of Information for this Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.    Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VIII.   Financial Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       Description of Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       Application of Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IX.     Summary of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       Class 1 - The United States Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
       Class 2 - Administrative Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
       Class 3 - Allowed Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       Class 4 - Allowed Unsecured Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       Class 5 - Allowed General Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       Class 6 - Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       A.      Other Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
       B.      Bar dates for filing proofs of claim . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       C.      Litigation Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       D.      Title to Assets:  Discharge of Liabilities . . . . . . . . . . . . . . . . . . . . . . . . 16

X.      Alternatives to the Plan Proposed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       A.      Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
       B.      Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
       C.      Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XI.     Federal Income Tax Consequences to Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XII.    Means for Implementation and Execution of the Plan . . . . . . . . . . . . . . . . . . . . . . . 19

Avoidance Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XIII.   Executory Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      A.    Contract Rejection Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
      B.    Reservation of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XIV.   Modification of Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XV.    Disclosure Required by the Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XVI.   Fraudulent and Preferential Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      Code References . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
      Preferences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
      Fraudulent Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      Insolvency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      Significant Transactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XVII.  Other Bankruptcies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XVIII. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      Schedule of Class 5 and Class 6 Claimants

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
|     RUSSELL W. FRENCH | § | CASE NO. 05-93655-H5-11 |
|         DEBTOR | § | |

**RUSSELL W. FRENCH'S**
**FIRST AMENDED DISCLOSURE STATEMENT**

**NOTICE TO CREDITORS AND PARTIES IN INTEREST**

THE DEBTOR, RUSSELL W. FRENCH, RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN WHICH IS NOT CONTAINED IN THE DISCLOSURE STATEMENT, NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATIONS OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

**I.**

**Introduction**

On October 15, 2005, Russell W. French, the Debtor, filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code ("Code"). The Debtor subsequently converted his case to a Chapter 11 case on May 8, 2006. The Debtor has remained in possession of his property pursuant to the provisions of 11 U.S.C. §§1144 and 1107, which provides that the Debtor shall retain possession of and manage its property as a Debtor-in-Possession. The Debtor retained the law firm of Isgitt & Associates, P.C. d/b/a Isgitt, Dees & Turcotte as counsel for the Debtor under a general retainer. C. Zan Turcotte is lead counsel in this proceeding. This law firm continues to represent the Debtor in these proceedings.

The first meeting of creditors pursuant to §341 of the Bankruptcy Code was held on January 25, 2006, at 9:00 a.m. at the United States Trustee's office in Houston, Texas. A second meeting of creditors was conducted on June 20, 2006 at 3:00 p.m., following

1

conversion of the Debtor's case to Chapter 11.

This Disclosure Statement ("Disclosure Statement") is provided pursuant to 11 U.S.C. §1125 to all of the Debtor's known creditors and other parties-in-interest in connection with the solicitation of acceptance of the Debtor's Plan of Liquidation (the "Plan") filed by the Debtor.  This Disclosure Statement contains important information about the Plan.  The purpose of this Disclosure Statement is to provide such information as would enable a hypothetical, reasonable creditor typical of the holders of claims in this reorganization case to make an informed judgment in exercising its vote to either accept or reject the Plan. The Debtor has prepared this Disclosure Statement in order to disclose that information which, in its opinion, is material, important, and necessary to an evaluation of the Plan.

**THE PLAN IS NOT A PART OF THIS DISCLOSURE STATEMENT AND MUST BE REVIEWED INDEPENDENTLY.**

This Disclosure Statement must be approved by the Bankruptcy Court and/or District Court, after notice and hearing, prior to the solicitation of creditors with respect to their acceptance of the Plan.

Your vote on the Plan is important.  In order for the Plan to deemed "accepted" by creditors, Sixty-Six and Two-Thirds Percent (66-2/3%) in amount of claims and more than Fifty Percent (50%) in number of claims voting in each class must accept the Plan.  In the event the Plan is not accepted by any class, the Debtor will request confirmation of the Plan in accordance with the provisions of 11 U.S.C. §1129(b).  Whether or not you expect to be present at the Confirmation Hearing, you are urged to fill in, date, sign and properly mail the Ballot to the United States Bankruptcy Court, 515 Rusk Avenue, Room 1123, Houston, Texas 77002, with a copy to Isgitt, Dees & Turcotte, 800 Sawyer St., Houston, TX 77007, Attorneys for the Debtor.

## II.

### Nature of Chapter 11 Reorganization Proceedings

Chapter 11 of the Bankruptcy Code is a remedial statute designed to effect the

2

rehabilitation and reorganization of financially distressed individuals and entities or the orderly liquidation of the Debtor's property to maximize the return to the Debtor's unsecured creditors. The statutory aims of reorganization/liquidation proceedings include the following:

(a)     preservation of the Debtor's property as a "going concern" and the preservation of any going concern value of the Debtor's business and property;

(b)     avoidance of the forced and destructive liquidation of the Debtor's assets;

(c)     the protection of the interest of the creditors, both secured and unsecured;

(d)     the restructuring of the debts of the Debtor and its finances to enable it to retain those assets necessary to rehabilitate its finances and produce the greatest recovery for its creditors.

While the formulation and confirmation of a Plan of Reorganization or Liquidation is the principal function of a Chapter 11 case, Congress recognized in 11 U.S.C. Section 1123(a)(5)(d), that the sale of all or any part of the property of the estate and the distribution of all or part of the property of the estate among those having an interest in the property is also a legitimate function of a Chapter 11 proceeding. Therefore, a Plan may affect the interest of all parties and creditors, reject executory contracts and provide for prosecution and/or settlement of the Debtor's claims against third parties. For a Plan to be confirmed by the Court, the Bankruptcy Code requires that the Court finds that the Plan has received the favorable votes of certain requisite classes and the Plan be "fair, equitable and feasible," as to any dissenting classes of creditors.

To be determined "fair and equitable", a Plan must comply with the so-called "absolute priority rule". The absolute priority rule requires that beginning with the most senior rank of claims of creditors against the Debtor, each class in descending rank or priority must receive full and complete compensation before an inferior or junior class may participate in the distribution. The Plan must be accepted by the affirmative vote of a majority of creditors holding two-thirds in amount of claims filed and allowed by each

3

class, unless adequate provisions are made for the classes of dissenting creditors. The foregoing is a brief summary of the requirements for a Plan and should not be relied upon for voting purposes. Creditors are urged to consult their own counsel before making any decisions on a Plan filed herein.

In addition to the above, 11 U.S.C. §1125 requires that a Debtor compile a Disclosure Statement which provides "adequate information" to creditors before anyone may solicit acceptance of a Chapter 11 Plan. This Disclosure Statement is prepared in accordance with Section 1125 to provide "adequate information" to the creditors in this proceeding. Creditors are urged to consult with their own individual counsel or each other and to review all of the pleadings filed in this bankruptcy proceeding in order to fully understand the disclosures made herein, the Plan of Reorganization filed herein, and any other pertinent matters in this proceeding.

This Chapter 11 proceeding is conducted under the supervision of a Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Pursuant to the Code, the Court may:

(a)     authorize the Debtor, as Debtor-in-Possession, to operate its business and manage its property;

(b)     permit rejection of executory contracts;

(c)     authorize the Debtor to issue certificates of indebtedness;

(d)     authorize the Debtor-in-Possession to lease or sell the property of the Debtor;

(e)     grant or deny relief from the stay or any suit against the Debtor and of any acts or proceedings to enforce a lien against the Debtor's property; and

(f)     approve and confirm any Plan of Reorganization.

### III.

### Considerations in Voting on the Chapter 11 Plan

**Operation of Chapter 11.** Chapter 11 of the Bankruptcy Code permits the adjustment of secured debts, unsecured debts, and equity interests. A Chapter 11 Plan may provide less than full satisfaction of senior indebtedness and payment of junior

4

indebtedness or may provide for return of the stock in a Debtor corporation to its equity owners absent full satisfaction of indebtedness provided that an impaired class does not vote against the Plan.

If an impaired class votes against the Plan, implementation of the Plan is not necessarily impossible. Provided that the Plan is fair and equitable and that each class is afforded treatment as allowed by and defined in the Bankruptcy Code, treatment of a particular class may be very broadly defined as providing to a creditor the full value of its claim. The value of that creditor's claim is determined by the Court and balanced against the treatment afforded the dissenting class of creditors. If the latter is equal to or greater than the former, the Plan may be confirmed over the dissent of that class, depending on junior claims and interests.

If a class is unimpaired, it is automatically deemed to accept the Plan. A class is unimpaired if:

1.      Its rights after confirmation are the same as existed (or would have existed absent any default) before the commencement of the Chapter 11 case, that any existing defaults are cured or provided for under the plan, and the class is reimbursed actual damages; or

2.      The allowed claims of the class are paid in full in cash as they mature.

If there is no dissenting class, the test for approval by the Court of a Chapter 11 Plan is whether the Plan is in the best interest of the creditors and interest holders and is feasible.

**In simple terms, a plan is considered by the Court to be in the best interest of creditors and interest holders if the plan will provide a better recovery to the creditors and interest holders than they would obtain if the debtor were liquidated and the proceeds of the liquidation were distributed in accordance with the bankruptcy liquidation priorities. In other words, if the plan provides creditors and interest holders with money or other property of value exceeding the probable dividend in liquidation bankruptcy then the plan is in the best interest of creditors and interest holders (the Court, in considering this factor, is not required to consider any other alternative to the plan other than liquidation bankruptcy).**

In considering feasibility, the Court is only required to determine whether the Plan

5

can be accomplished by the Debtor.  This entails determining:

    A.    The availability of cash for payments required at confirmation;

    B.    The ability of the Debtor to make payments called for under the Plan; and

    C.    The absence of any other factor which might make it impossible for the Debtor to accomplish that which it promises to accomplish in the Plan as contemplated in the Plan.

In addition, in order to confirm a Plan the Court must find, among other things, that the Plan was proposed in good faith and that the Plan and its proponents are in compliance with the applicable provisions of Chapter 11.

These determinations by the Court occur at the hearing on confirmation of a Plan. The Court's judgment on these matters does not constitute an expression of the Court's opinion as to whether the Plan is a good one or an opinion by the Court regarding any debt instrument or equity interest or security interest issued to creditors under the Plan.  Rather, the Court's judgment is merely that the Plan complies with the applicable Code provisions and has garnered sufficient votes by its creditors for confirmation.

**Upon satisfaction of §1129(a), the general confirmation standards, but excluding paragraph (8), the debtor may request that the court confirm the plan over the dissent of a class.  The court is required to confirm if the plan meets with the cram down standards set forth in §1129(b).  This procedure is the process by which a dissenting class of creditors or interests is bound by the terms of a chapter 11 plan without its consent.  This plan may be confirmed with reference to a non-accepting impaired class if two standards are met: (1) the plan does not discriminate unfairly against the class, and (2) the plan is fair and equitable with reference to the class.  Upon such determination, the court will bind the dissenting creditor(s) to the plan without its consent.**

**IV.**

**History of the Debtor**

    **A.**    **Background.**  The Debtor acquired an interest in a shopping center, known as Woodcreek Center, during the 1970's.  The Debtor owned an undivided 50% interest in Woodcreek Center together with his former spouse, Shirley French.  During 2002 and subsequent to their divorce, the Debtor and Shirley French conveyed their interest in Woodcreek Center to Woodcreek Center Ltd., a Texas limited partnership, established for

6

the purpose of owning and operating the shopping center. The partnership ownership is as follows:

49½ % - Shirley French, limited partner

49½ % - Debtor Russell W. French, limited partner

½ % - Woodcreek Interest, L.L.C., general partner

Woodcreek Center, Ltd. owns no other property or assets except the real property and improvements consisting of the shopping center, Woodcreek Center. Woodcreek Interest, L.L.C., the general partner, has no assets or property other than its ½% interest in Woodcreek Center, Ltd. Shirley French and the Debtor each own a 50% interest in Woodcreek Interest, L.L.C.

Woodcreek Center did not prove to be a cash-producing venture, and in the recent years, has required that the Debtor contribute funds to pay the taxes and maintenance costs. Subsequent to the commencement of the Debtor's bankruptcy case, the facility needed extensive repair, including a new roof and major parking lot repairs.

The Debtor sought and obtained Court authorization to sell Woodcreek Center to Shirley French for a net sales price of $160,000.00 for his interest.[1] The Debtor also obtained Court approval to sell a rental house located at 9617 East Andricks, Laporte, Texas. The Andricks house failed to generate sufficient revenue to pay the mortgage and expenses of upkeep and maintenance on the house, and the Court-approved sale relieved the Debtor from the mortgage and costs of sale, but did not yield any excess proceeds. The funds received from the Woodcreek Center sale were deposited into a segregated account, from which no withdrawals are made without Court authorization. The funds in this account will be used to fund the Debtor's proposed Chapter 11 Plan as described in more detail in Section IX below.

As his primary source of income, the Debtor has acted as chief executive officer of

---

[1]The Debtor mistakenly believed that title to the real property of Woodcreek Center was held by the Debtor and Shirley French. Subsequently, the Debtor discovered that legal title to the real property was held in the name of Woodcreek Center, Ltd., and upon his request, the Court amended the order authorizing the sale of the property and correct the inaccuracy.

7

a related entity, Amex Insulation Co., Inc. ("Amex"), since 2002, and has been in the insulation contracting business for over 30 years. The Debtor started a related company, French & Morton, L.L.C. ("F&M") about 10 years ago, and operated it successfully until acquiring an equity interest in Amex and taking over its management. Both F&M and Amex were owned by the Debtor (40%), Mary Morton (20%) and Scott Morton (40%), who are all insiders of the Debtor, Amex and F&M. Amex is in a pending Chapter 11 bankruptcy proceeding, Case No. 05-91861-H5-11, in this court. F&M is in a pending Chapter 7 bankruptcy proceeding, Case No. 05-91923-H5-7, in this court.

The Court confirmed Amex's Chapter 11 plan on January 9, 2007. Pursuant to the terms and provisions of its confirmed Chapter 11 plan, Amex has timely made monthly distributions in accordance with the plan to its creditors. The Debtor's continued role as chief executive officer of Amex remains critical to its successful reorganization through its confirmed Chapter 11 Plan. As an integral part of the confirmation of Amex's Chapter 11 plan, the Court and Amex's creditors approved an agreement whereby the Debtor waived his wage claims against Amex and agreed to continue his employment with Amex throughout the duration of its Chapter 11 plan in consideration for obtaining all outstanding shares of stock in the reorganized Amex. The Debtor is now the sole shareholder of Amex. Amex's Chapter 11 plan provides that its unsecured creditors will receive a 64.71% dividend on their claims, paid out over a period of four years from Amex's net income. Amex's Chapter 11 plan is available from the United States Bankruptcy Clerk, 515 Rusk Avenue, Room 1123, Houston, Texas 77002, or Amex's counsel, C. Zan Turcotte, Isgitt, Dees & Turcotte, 800 Sawyer, Houston, TX 77007, (713) 572-7678.

**B.      Events Leading to the Chapter 11 Filing** The necessity for commencing the Debtor's Chapter 11 case arose due to the related bankruptcies of F&M and Amex. F&M filed a Chapter 11 case on October 14, 2005, and then voluntarily converted its case to a Chapter 7 case on January 23, 2006. Amex filed a voluntary Chapter 11 case on October 14, 2005.

8

As a principal of both Amex and F&M, the Debtor guaranteed debt for both companies, which far exceeds his ability to pay. One creditor of F&M, General Insulation, has filed a claim in the amount of $461,651.33, in the Debtor's bankruptcy case.[2] The Debtor was also prospectively liable for unpaid trust fund taxes of F&M in an amount exceeding $400,000; however, the Debtor has successfully negotiated with the IRS, resulting in no assessment of trust fund taxes for F&M. A factor in the IRS' decision not to assess taxes against the Debtor was the Debtor's payment to the IRS in the amount of $45,209.16. The Debtor obtained funds to make the payment by obtaining a home equity loan on the Andricks property shortly before the filing of the Debtor's bankruptcy case. Due to delays in funding of the mortgage, the actual payment to the IRS occurred subsequent to the commencement of bankruptcy case.

The Debtor worked for several months preceding the filing of Amex's bankruptcy case for reduced or no compensation, creating tremendous cash flow difficulties for the Debtor, and ultimately necessitating his seeking relief through the Bankruptcy Court.

**C.     The Chapter 11 Filing.** The Debtor's pre-petition debt consists primarily of secured debt on his homestead, consumer debt, and the debts of Amex and F&M for which he is liable. The Debtor commenced his bankruptcy case to protect his creditors and proceed with an orderly liquidating Chapter 11 plan to maximize the benefit to his creditors. The Debtor anticipates paying his secured debt by virtue of his salary received from Amex, which remains fixed at $6,000.00 monthly for the next year.

**D.     Operation and Present Condition.** The Debtor has successfully sold his properties, excluding his homestead and exempt personal property, obtaining a fair market price without the expense of real estate professionals. In addition, the prompt sales of the properties reduced the expenditures of the Debtor's estate for maintenance and upkeep of the properties. The sales proceeds realized from the sale of Woodcreek Center will provide funding for the Debtor's Chapter 11 plan of liquidation.

---

[2]The claim is disputed, along with other claims asserted by creditors of Amex.

9

## V.

### Anticipated Future of the Debtor

The Debtor's proposed Chapter 11 plan of liquidation will yield the maximum benefit to the unsecured creditors of the Estate. The Debtor's continued employment with Amex at a modest salary will provide him basic living expenses and the ability to satisfy the Estate's secured debt in accordance with its terms. The sale of his remaining non-exempt assets without the associated sales costs provides the greatest recovery to the unsecured creditors.

## VI.

### Source of Information for this Disclosure Statement

The information contained herein has not been subject to a certified audit. Much of the information, descriptions, values and facts contained herein are derived from the books and records of the Debtor, and the unaudited financial statements prepared by Ken Weeks, CPA, from the books and financial records of the Debtor, which are maintained on the cash basis of accounting. Accordingly, the Debtor does not warrant or represent that the information contained herein is correct, although great effort has been made to be as accurate as possible. This Disclosure Statement contains, in entirety, the Plan itself which is controlling in the event of any inconsistencies. Each creditor is urged to review the Plan prior to voting.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein and the delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts as set forth herein since the date hereof. All the terms herein have the same meanings as in the Plan unless the context requires otherwise.

## VII.

### Disclaimer

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATIONS CONCERNING THE DEBTOR, HIS ASSETS, PAST OR FUTURE BUSINESS OPERATIONS, OR THE PLAN ARE AUTHORIZED**

NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY. THE FACTUAL INFORMATION REGARDING THE DEBTOR, THE DEBTOR'S ESTATE, HIS ASSETS AND LIABILITIES HAS BEEN DERIVED FROM THE DEBTOR'S RECORDS, THE DEBTOR'S SCHEDULES, PUBLIC RECORDS AND RELATED DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.

NEITHER THE DEBTOR NOR HIS COUNSEL CAN WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ANY INACCURACY, ALTHOUGH THEY DO NOT HAVE ACTUAL KNOWLEDGE OF ANY INACCURACIES.

APPROVAL OF THIS DISCLOSURE STATEMENT IS NOT A FINDING BY THE COURT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE AND COMPLETE.  FURTHER, APPROVAL OF THE DISCLOSURE STATEMENT IS NOT AN INDICATION BY THE COURT OF THE CONFIRMABILITY OF THE PLAN.

## VIII.

### Financial Information

PLEASE BE ADVISED THAT COPIES OF THE FINANCIAL INFORMATION ENUMERATED IN SUBPARAGRAPHS 1 (ONE) THROUGH 3 (THREE) BELOW ARE ON FILE AND AVAILABLE IN THE UNITED STATES BANKRUPTCY CLERK'S OFFICE, 515 RUSK AVENUE, HOUSTON, TEXAS  77002.

1.      Statement of Financial Affairs for Debtor Engaged in Business.

2.      Schedules A, B, C, D, E and F, and the Summary of Schedules, and any amendments thereto.

3.      Monthly Operating Reports filed by the Debtor.

4.      Calculation of Unsecured Creditor Dividend (included herein).

11

**Liquidation Analysis**. The Debtor has prepared a liquidation analysis shown below to provide a determination of the liquidation value of the Debtor's assets, which is included for the information of all parties-in-interest. The Debtor's assets consist of cash proceeds from the sale of the non-exempt property of the Debtor, in the current amount of approximately $133,000.00 ($160,000.00 net proceeds less Court-authorized payment of professionals in the aggregate amount of approximately $27,000.00).

The Debtor's tangible assets on a "forced liquidation" basis will not differ from the assets under a Chapter 11 liquidation process, since the Debtor's non-exempt assets consist wholly of cash proceeds from the sale of the Debtor's interest in Woodcreek Center. The difference between forced liquidation in a bankruptcy context, to-wit, in a Chapter 7 bankruptcy proceeding, rather than in a Chapter 11 proceeding, will be the additional tier of administrative expenses in a Chapter 7 proceeding, for the Chapter 7 trustee and such professionals as the Chapter 7 trustee might retain to assist him with his duties.

**Description of Liabilities.** The following liability information summarizes data (i) as set forth in the Debtor's Schedules D, E and F claims on file herein, and (ii) the Debtor's best estimates of the additional costs incumbent with conversion to a Chapter 7 proceeding.

| Description | | Amount |
|---|---|---|
| Estimated Bankruptcy attorney's fees and accountant fees | | 21,000 |
| Estimated U. S. Trustee fees | | 750 |
| Estimated Chapter 7 Trustee fees pursuant to 11 U.S.C. §326 | | 11,250 |
| Estimated Chapter 7 Trustee legal fees | | 25,000 |
| Estimated Chapter 7 Trustee accountant fees | | 12,000 |
| Secured claims (Class 3 claimants) [paid in part by Debtor from his wages in accordance with loan documents; prepetition mortgage arrearage paid on Plan effective date] | | 5,801 |
| Priority claims (Class 4 claimants) | | 9,197 |

| Description | | Amount |
|:---:|:---:|:---:|
| Unsecured claims (Class 5 claimants) | | 239,297 |
| Disputed unsecured claims (Class 6 claimants) | | 476,383 |
| **TOTAL** | | **800,678** |

**Application of Liquidation Analysis.**  The data reflected above shows that under a liquidation analysis there would be $48,250.00 less for distribution to the unsecured creditors due to the additional administrative costs associated with a Chapter 7 trustee. Consequently, the Class 5 unsecured claimants would receive a maximum of 20.06% dividend, instead of up to a 40.22% dividend of their claims as proposed under the liquidating Plan. It is important to note that the Chapter 7 Trustee and professional fees associated with forced liquidation under a Chapter 7 conversion are only estimates.

## IX.

## Summary of the Plan

The following is a brief summary of certain provisions of the proposed Plan of Liquidation to assure that the creditors affected understand its provisions. This summary should not be considered as solicitation for acceptance of that Plan.  Additionally, creditors should not rely on this summary to decide whether or not to vote in favor of or against the Plan, but are expressly referred to the Plan itself since it contains many provisions which will not be summarized herein.

The Plan of Liquidation proposes that payments of Allowed Claims in the order of their priority commence within sixty days from the Effective Date of the Plan.

The Debtor's Plan of Liquidation will provide for classification of creditors in accordance with the United States Bankruptcy Code.

**Class 1- The United States Trustee.**  The United States Trustee. Class 1 is unimpaired and consists of the unpaid Claim of the office of the United States Trustee for its fees from the date of filing of the bankruptcy until the Chapter 11 file is closed by the Bankruptcy Clerk. These fees are based on the amount of disbursements made by the

13

Debtor and are paid on a quarterly basis. It is anticipated that no fees will be unpaid and owing to the United States Trustee as of the Effective Date of the Plan. The Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. §1930(a)(6) until such time as this Court enters a Final Decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After Confirmation, the Debtor shall file with the Court and shall serve on the United States Trustee a monthly operating report, in a format prescribed by the United States Trustee, for each month, or portion thereof, that this Chapter 11 case remains open.

**Class 2 - Administrative Expenses.**   Administrative Expenses. Class 2 is unimpaired. Class 2 is comprised of Allowed Claims entitled to priority by Section 507(a)(1) of the Bankruptcy Code and will consist of fees for services rendered and expenses incurred by the Court appointed Counsel and other professional persons for the Debtor prior to the Effective Date of the Plan, as the same are finally approved and allowed by Final Order of the Court, and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid and may be approved by the Court. The members of this Class includes C. Zan Turcotte, Isgitt, Dees & Turcotte, Counsel for the Debtor and Ken Weeks, CPA of Weeks, P.C.

All Allowed Claims in this Class shall be paid in cash and in full on the Effective Date or the date that such Allowed Claims are finally approved by the Court, whichever is later. The fees for Isgitt, Dees & Turcotte, are estimated to total $15,000.00. The fees for Ken Weeks, CPA, are estimated to be $6,000.00.

**Class 3 - Allowed Secured Claims.**  Class 3 is impaired and consists of the allowed secured claims of American Honda, Citi Auto Financial, Ford Motor Credit, the Matagorda County Tax Assessor, Wells Fargo (for Gallery Furniture) and National City Mortgage. National City Mortgage shall be paid the amount of the prepetition arrearage on the mortgage in the amount of $5,085.69 plus accrued interest at 8% from the date of the commencement of the bankruptcy case until payment, estimated to be $715.62, on the effective date of the Plan.  The secured claimants shall be paid in accordance with the terms

14

of their respective loan documents, and applicable state law.  The secured claimants shall retain their pre-petition liens in and to the various assets of the Debtor and his estate which secure their respective pre-petition indebtedness.

**Class 4 - Allowed Unsecured Priority Claims.**  Class 4 is impaired and consists of the allowed unsecured priority claim of the Internal Revenue Service in the amount of $9,197.35.  The Class 4 claimant shall be paid in full in the amount of $9,197.35 on or before sixty days following the Effective Date.

**Class 5 - Allowed Claims of the General Unsecured Claimants.**  Class 5 is impaired and consists of the Allowed Unsecured Claims, which are not disputed and are not Insiders, in the aggregate amount of $239,296.68, as reflected on the attached schedule.  A fund of $75,000.00 shall be set aside from the Net Proceeds for an initial distribution to the Class 5 Claimants.  The Class 5 Claims shall be paid their pro-rata share of the $75,000.00 fund on or before sixty days following the Effective Date.  The funds remaining from the Net Proceeds following payment of Classes 1 through 4, shall be distributed pro-rata to the Class 5 Claimants at such time as all Class 6 disputed claims are resolved and reclassified as Class 5 Claims.  The Class 5 claimants shall initially receive a dividend of 31.34% of their total claim, and may receive up to an additional 8.88% estimated dividend, for a total of 40.22% dividend on their claims.

**Class 6 - Disputed Claims**.  Class 6 is impaired and consists of claims which are disputed.  Upon resolution of each Class 6 Claim, such claim, if any, shall be reclassified as a Class 5 Claim and treated accordingly.  Class 6 Claims which are not resolved prior to the initial distribution from the $75,000.00 fund to the Class 5 Claimants shall not participate in such distribution.

**A.    Other Provisions.**    The Court shall retain jurisdiction to insure that this Plan is carried out and to determine any other matters in connection with this case, including, but not being limited to the following:

> (a)    To determine any and all objections to the allowance of Claims and Equity Security Interests;

(b)   To determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if necessary to liquidate, any and all Claims arising therefrom;

(c)   To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, or instituted by the Debtor after the Effective Date, including without limitation, any Claims arising under the Bankruptcy Code to avoid any preferences, fraudulent conveyances or other voidable transfers;

(d)   To consider any modifications of the Plan, any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including without limitation, the Confirmation Order;

(e)   To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or the execution and delivery of any Plan exhibit;

(f)   To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

(g)   To determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order; and

(h)   To determine any and all pre-confirmation applications for allowances of compensation, entitled to priority under §507(a)(1) of the Code; and reimbursement of expenses and any other pre-confirmation fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

**B.   Bar dates for filing proofs of claim**.  The Debtor has filed as a part of its schedules a list of all Creditors, setting forth the identity of each Creditor and an indication of the amount due each Creditor.  Unless a Claim is listed as disputed, contingent or unliquidated, each Creditor's Claim will become an Allowed Claim in the amount and status stated on the Debtor's schedules in the absence of filing a proof of claim in a different amount or status on or before the expiration of 90 days from the date first set for the meeting of Creditors.  **Claims listed as disputed, contingent, or unliquidated will not be**

**allowed unless a proof of claim with all supporting documents was filed prior to September 5, 2006.** In the event a Creditor has filed a proof of claim in these proceedings with which the Debtor disagrees, the Debtor has the option to file an objection to that Claim and request the Court to determine the amount of the Allowed Claim. The Debtor shall attempt to resolve all objections to Claims prior to Confirmation. However, the Debtor shall have 60 days from the Effective Date of the Plan to file objections to Claims.

Any proof of claim which is not timely filed shall be of no force and effect. No distribution will be made to any Creditor that has not timely complied with this provision.

C.    **Litigation Injunction**. Upon Confirmation of the Plan, an injunction shall issue which prohibits all Creditors (whether allowed or not) from pursuing Claims in any forum outside this Court if such Claim arises out of the actions of the Debtor. This injunction shall issue notwithstanding any provision to the contrary in any contract involving the Debtor, for which the Debtor, an Insider or affiliate, or a Creditor of this estate may be liable, so long as the Debtor is not in Default under the Plan.

Upon confirmation of the Plan, in addition to all other relief allowed by the Bankruptcy code, an injunction shall issue against all holders of Claims preventing the enforcement of the Claim except as specifically stated in this Plan.

D.    **Title to Assets: Discharge of Liabilities.** Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties dealt with by the Plan shall vest in the Debtor, in accordance with Section 1141 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances; and the Confirmation order shall be a judicial determination of the liabilities of the Debtor, except as provided in the Plan.

X.

**Alternatives to the Plan Proposed**

The Debtor expects that the Plan will enable it to realize the maximum benefits for all of its creditors.

A.    **Conversion**. In the event no suitable alternative can be found, the Debtor would be compelled, as well as obligated, to recommend the conversion of the Chapter 11

17

case to a case under Chapter 7, and a subsequent liquidation by a duly appointed or elected Chapter 7 trustee. The plan provides that property of the estate will vest in the Debtor thirty days after entry of the final confirmation order. Creditors shall retain their ability to utilize rights under 11 U.S.C. Section 1112(b)(8). Upon a conversion of this case to Chapter 7, all property re-vested in the Debtor under the Plan, or subsequently acquired, shall constitute property of the bankruptcy estate in the converted case. Although the Debtor is of the opinion that a straight liquidation of the assets in a Chapter 7 proceeding would not be in the best interest of the creditors generally, the following is likely to occur:

(i)     The newly appointed Chapter 7 trustee would have to become familiar with the Debtor's operations in order to evaluate all the Debtor's assets and liabilities;

(ii)    In addition to the duplication of efforts that would transpire as a result of the Chapter 7 trustee having to review documents and interview persons in order to become sufficiently acquainted with the Debtor's business, the Chapter 7 trustee would likely retain professionals, such as attorneys and accountants, to aid in administering the estate;

(iii)   An additional tier of administrative expenses entitled to priority over general unsecured claims would be incurred. Such administrative expenses would include Chapter 7 trustee's commissions, and fees for the professionals likely to be retained; and

(iv)    There would likely be no distribution at all to the creditors until the case is ready to be closed.

The Debtor will allow the creditors and parties-in-interest to draw their own conclusions with respect to the delay and cost associated with a Chapter 7 liquidation. It is certain that the above factors would result in an additional dilution to the projected dividend, as illustrated by the Liquidation Analysis more fully explained in Section VIII of this Disclosure Statement. The Debtor believes that the application of the Liquidation Analysis accurately reflects the results of a Chapter 7 liquidation.

18

The Debtor has chosen to liquidate its business in an orderly fashion as opposed to a liquidation under a Chapter 7 Proceeding.  The Debtor believes that this will maximize the return to creditors.

**B.      Dismissal**.  In the Debtor's opinion, dismissal of the proceeding would lead to an unsatisfactory result.  Dismissal would result in a liquidation similar to conversion to a Chapter 7 bankruptcy case, except without the protection of the Federal Bankruptcy Court to ensure an orderly liquidation and payment of claims on a pro-rata basis in the order of priority.

The Debtor has attempted to set forth possible alternatives to the proposed Plan.  Accordingly, one should recognize that a vote against the Plan and the ultimate rejection of the Plan would not alter the present status of the Debtor.  The vote on the Plan does not include a vote on alternatives to the Plan.  There is no assurance what turn the proceedings will take if the Plan is rejected.  If you believe one of the alternatives referred to above is preferable to the Plan and you wish to urge it upon the Court, you should consult your counsel.

**C.      Notices.**  Notice to the Debtor shall be sent to the following:

> Russell W. French
> 726 Canyon Springs Dr.
> La Porte, TX 77571
>
> C. Zan Turcotte
> Isgitt, Dees & Turcotte
> 800 Sawyer St.
> Houston, TX 77007

## XI.

### Federal Income Tax Consequences to Creditors

The Debtor believes that the following discussion generally sets forth the Federal income tax consequences to Creditors upon confirmation and consummation of the Plan.  No ruling has been sought or obtained by the Debtor from the Internal Revenue Service ("IRS") with respect to any of these matters.  The following discussion of Federal income tax consequences is not binding on the IRS and is general in nature.  No statement can be

19

made herein with respect to the particular Federal income tax consequences to any Creditor.

**AS A RESULT OF THE COMPLEXITY OF THE APPLICABLE PROVISIONS OF THE INTERNAL REVENUE CODE, EACH CREDITOR IS URGED TO CONSULT ITS OWN TAX ADVISOR IN ORDER TO ASCERTAIN THE ACTUAL TAX CONSEQUENCES TO IT, UNDER FEDERAL AND APPLICABLE STATE AND LOCAL LAWS, OF CONFIRMATION AND CONSUMMATION OF THE PLAN.**

Creditors may be taxed on distributions they receive from the Estate. The amount of the income or gain, and its character as ordinary income or capital gain or loss, as the case may be, will depend upon the nature of the Claim of each particular Creditor. The method of accounting utilized by a Creditor for Federal income tax purposes may also affect the tax consequences of a distribution. In general, the amount of gain (or loss) recognized by any such Creditor distributee will be the difference between (i) the Creditor's basis for Federal income purposes, if any, in the Claim and (ii) the amount of the distribution received. Whether the distribution will generate ordinary income or capital gain will depend upon whether the distribution is in payment of a Claim or an item which would otherwise generate ordinary income on the one hand or in payment of a claim which would constitute a return of capital.

## XII.

### Means for Implementation and Execution of the Plan

Implementation of the Plan requires entry of an order by the Court confirming the Plan. The Plan is to be implemented, if accepted and approved by the Court, in its entire form. The Debtor proposes to effectuate the Plan by distribution of the remaining proceeds from the sale of Woodcreek Center, as described more fully in Section V.

**Avoidance Actions.** The Debtor shall have the power to bring any and all Avoidance Actions and any other causes of action held by the estate as of the Effective Date. The Debtor, at its discretion, may pursue such Avoidance Actions and other estate causes of action, and take all actions in connection with the prosecution, defense, compromise or settlement thereof, and in such connection may retain such counsel, accountants, or other professionals deemed necessary in connection therewith. Payment

20

of the costs of litigation in connection with such Avoidance Actions and other claims shall be paid by the Debtor unless otherwise ordered by the Court. In the event the Debtor obtains recoveries from prosecution of the Avoidance Actions and other claims, such recoveries shall be used and distributed in accordance with the Plan to the extent required.

## XIII.

### Executory Contracts

**A.    Contract Rejection Damages**.  Persons who have claims for damages in connection with rejected contracts or unexpired leases must file claims on or before the Effective Date.  A copy of each such claim must be served on the Debtor.  Thirty (30) days after the last day for filing claims for Contract Rejection Damages, the Debtor must file objections to such claims.  If no such objection is filed, the claim shall become an Allowed General Unsecured Claim entitled to treatment as a Class 5 Claim.  If an objection is filed, the claim will be treated as a Disputed Class 6 Claim until it becomes an Allowed Claim.

**B.    Reservation of Rights**.  The Debtor reserves the right to assume or reject, pursuant to §365 of the Bankruptcy Code, prior to the confirmation date, any executory contract or unexpired lease not assumed or rejected pursuant to this section.  The Debtor does not anticipate assuming any executory contracts.

## XIV.

### Modification of Disclosure Statement

The Debtor may propose amendments to or modification of this Disclosure Statement at any time prior to the confirmation, with leave of the Court.   After confirmation, the proponent may, with the approval of the Court, so long as it does not materially or adversely affect the interests of the creditors or other parties-in-interest as set forth herein, remedy any defect or omission, reconcile any inconsistencies in this Disclosure Statement, or in the Order Approving Disclosure Statement, in such a manner as may be necessary to carry out the purposes and intent of this Disclosure Statement.

21

## XV.

### Disclosure Required by the Bankruptcy Code

The Bankruptcy Code requires the disclosure to the Bankruptcy Court of payments made or promised of the kind as set forth in Section 1129(a)(5) of the Bankruptcy Code. The Debtor retained Isgitt & Associates, P.C. as bankruptcy counsel.  The Debtor further agreed to pay Isgitt & Associates, P.C. at each individual attorney's or paralegal's hourly rate for representation of the Debtor.  The Bankruptcy Code requires that the Court approve all professional's fee applications prior to payment by a Debtor.  Therefore, subject to Court approval, the Debtor has agreed to pay for the actual services rendered for representation in this bankruptcy case.

## XVI.

### Fraudulent and Preferential Transfers

**Code References.**  §547 and §548 of the Bankruptcy Code prohibit certain payments and transfers of property by the Debtor during varying periods prior to the commencement of a bankruptcy case.

**Preferences**.  §547 of the Bankruptcy Code speaks of "preferences", defined as a payment made by an insolvent debtor to a creditor, or for the benefit of a creditor, within ninety days of the date of filing of a case under any chapter of the Bankruptcy Code, as a result of which the creditor receives more than it would receive if the debtor had filed a case as a liquidating bankruptcy under Chapter 7 of the Bankruptcy Code.  Under §547 of the Bankruptcy Code, a debtor is presumed to be insolvent during the ninety days preceding the filing of the case.  A "reach back" period of one year is applicable to payments made to insiders of the debtor.  An insider of a corporate debtor, includes, but is not limited to, stockholders, officers, directors, partners, joint venturers, agents, and affiliates of the debtor.  Excluded from prohibited transactions under §547 are those payments made to creditors in exchange for new value, and those made in the ordinary course of business on ordinary business terms.

**Fraudulent Transfers**.  "Fraudulent Transfers" under §548 of the Bankruptcy Code

22

may generally be described as those transfers which are made during the year immediately preceding the filing of a bankruptcy case for the purpose of placing the debtor's assets beyond the reach of creditors, or transfers for no or for grossly disproportionate consideration made while the debtor is insolvent or as a result of which the debtor becomes insolvent.

**Insolvency**.  It should be noted that in order for a payment or transfer to be considered as a preferred or a fraudulent transfer, the Debtor must be insolvent. "Insolvency" is defined to mean that the debts are of a greater amount than the value of the debtor's property.

**Significant Transactions**.  The Debtor has examined the significant transactions made in the year preceding the filing of this case for the purpose of determining whether any of such transactions constitute preferences or fraudulent transfers.  As of the filing date of the Plan, the Debtor believes that none of the transactions have the characteristics of preferences or fraudulent transfers as defined above.  To the extent that any of the transactions are determined to be preferences or fraudulent transfers, the Debtor will seek to avoid such transactions.

## XVII.

### Other Bankruptcies

The Debtor has not filed a prior bankruptcy proceeding.  An affiliated company, French & Morton, L.L.C., commenced a Chapter 11 bankruptcy proceeding on October 15, 2005.  French & Morton subsequently converted its case to a Chapter 7 bankruptcy proceeding on January 23, 2006.  The Debtor is an insider of French & Morton, as that term is defined under 11 U.S.C. §101(31).

An affiliated company, Amex Insulation Co., Inc., commenced a Chapter 11 bankruptcy proceeding on October 15, 2005.  The Debtor is an insider of Amex as that term is defined under 11 U.S.C. §101(31).

23

## XVIII.

### Conclusion

The Debtor believes that approval of its Plan will provide an opportunity for its creditors to receive more money in the foreseeable future on their claims than would be received in a straight liquidation by a trustee in a Chapter 7 case or from a distress sale of all the assets.  If the Plan is not approved, the Debtor will continue to seek other reorganization alternatives, but liquidation might ensue, with the consequences as discussed above in relation to the liquidation alternative.

This Disclosure Statement is subject to the approval by the Bankruptcy Court after notice and hearing.

**THE APPROVAL BY THE UNITED STATES BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE DEBTOR'S PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

The Plan of Liquidation contains additional provisions and each creditor should review the provisions of the Plan with particularity.

There are no known risk factors in the Debtor's proposed Plan.

24

Respectfully submitted,


_____/s/ Russell W. French_____
Russell W. French, Debtor


Respectfully submitted,


_____/s/ C. Zan Turcotte_____
Percy L. "Wayne" Isgitt
TSB No. 10433000
C. Zan Turcotte
TSB No. 24028084
**ATTORNEYS FOR DEBTOR**

ISGITT, DEES & TURCOTTE
AN ASSOCIATION OF LAWYERS
800 Sawyer Street
Houston, Texas 77007
(713) 572-7678
(713) 572-6585 Fax

25